Javier L. Merino, Esq., (NJ Attorney No. 078112014)
**THE DANN LAW FIRM PC**
1520 US Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: (732) 545-7900
Fax: (216) 373-0536
Email: notices@dannlaw.com
*Counsel for the Plaintiff, Michael Kolber*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| **MICHAEL KOLBER**<br><br>    Plaintiff,<br><br>  v.<br><br>**PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES, AND SELECT PORTFOLIO SERVICING, INC.**<br><br>    Defendants. | **COMPLAINT FOR DAMAGES**<br><br>JURY DEMAND ENDORSED HEREON |

Plaintiff Michael Kolber ("Kolber" and "Plaintiff"), through counsel, for his Complaint against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH"), and Defendant Select Portfolio Servicing, Inc. ("SPS"), states as follows:

## **PARTIES, JURISDICTION, AND VENUE**

1.     Kolber is the owner of real property located at and commonly known as 20 Boland Drive, West Orange, New Jersey 07052 (the "Home").

2.     Kolber currently maintains the Home as his primary, principal residence and has so maintained for all times relevant to the allegations of this Complaint.

3.     Kolber is a "consumer" as that term is defined by applicable federal and state statutes.

4.     Defendant SPS is the current servicer of a note (the "Note") and a mortgage on the Home that allegedly secures the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

5.     Defendant PHH is a foreign corporation incorporated under the laws of the State of New Jersey that maintains its headquarters and principal place of business at 1 Mortgage Way, Mount Laurel, New Jersey 08054.

6.     Defendant PHH was the former servicer of the Loan up until the loan was transferred to servicer Defendant SPS effective January 3, 2023.

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action primarily arises under the Dodd-Frank Wall Street Reform and Consumer Protection

Act (DFA) and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq*.

8.     This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, *et seq*., of Regulation X.

9.     This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

10.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## SUMMARY OF CLAIMS

11.     This action is brought primarily to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. § 1024.35 of Regulation X.

12.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

13.     Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R.

10901 (February 14, 2013) and 78 F.R. 10695 (February 14, 2013), respectively, which became effective on January 10, 2014.

14.     Mortgage servicers are prohibited from failing "to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C).

15.     Mortgage servicers are prohibited from failing "to comply with any other obligation found by the [CFPB], by regulation, to be appropriate to carry out the consumer protection purposes of [RESPA][1]." 12 U.S.C. § 2605(k)(1)(E).

16.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

---

[1] "The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as ''servicing'' by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. *These standard servicer duties are not limited to duties that constitute ''servicing,'' as defined in this rule, and include, for example*, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, *and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans*." 78 Fed. Reg. 10695, 10739 (emphasis added).

17.     Plaintiff asserts claims for relief against Defendant PHH for violations of the specific rules under RESPA and Regulation X, as set forth, *infra*.

18.     Plaintiff asserts a claim for relief against Defendant PHH for breaches of the specific rules under RESPA and Regulation X as set forth, *infra*.

19.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f), for the violations claimed, *infra*, and such actions provide for remedies including actual damages, statutory damages, and attorneys' fees and costs.

20.     Additionally, Plaintiff asserts statutory claims for violations of the New Jersey Consumer Fraud Act, *N.J.S.A.* § 56:8-2, *et seq.* ("CFA") against Defendant PHH for unconscionable commercial practices and such action provides for treble damages, as well as reasonable attorneys' fees, and costs.

## ALLEGATIONS OF FACT

21.     On or about September 4, 2019, Kolber's Loan originated with LOANDEPOT.COM, LLC ("LoanDepot"), when he purchased the Home. *A true and accurate copy of the Loan is attached hereto as* **Exhibit A**.

22.     On or about August 1, 2021, PHH acquired servicing of the Loan.

23.     During 2022, Kolber experienced financial difficulties and sought mortgage assistance from PHH to make sure he could remain current on the loan.

24.     PHH notified Kolber he was approved to enter into a Trial Period Plan via correspondence dated February 9, 2022 (TPP #1), and the offer in TPP #1 had to be accepted by February 27, 2022. *A true and accurate copy of TPP #1 is attached hereto as* **Exhibit B**.

25.     TPP #1 required Kolber make three (3) payments of $3,394.71 to be paid on the 1st day of March 2022, April 2022, and May 2022. *See* Exhibit B.

26.     Due to his compliance with TPP #1, Kolber received a Permanent Modification Agreement ("PMA") in a correspondence dated May 4, 2022. *A true and accurate copy of the PMA is attached hereto as* **Exhibit C**.

27.     The PMA provided that Kolber's monthly payment would be $3.375.38 beginning on June 1, 2022. *See* Exhibit C. The PMA required the following for Kolber to accept the offer in the PMA: (1) Kolber and non-obligor Cheri Zeldis ("Zeldis" and "non-obligor") sign the PMA before a notary and return the PMA before May 22, 2022; and (2) if applicable to Kolber, Kolber make all remaining trial period payments on or before their due dates.

28.     Both Kolber and non-obligor Cheri Zeldis signed the PMA on May 19, 2022 before a notary. *See* Exhibit C. Kolber returned the signed PMA to PHH on or before May 22, 2022.

29.     Cheri Zeldis signed the PMA as "Cheryl B. Zeldis", as Ms. Zeldis's name on her passport was "Cheryl B. Zeldis", and the notary required that Mrs. Zeldis sign her name exactly as it was listed on her passport. *See* Exhibit C.

30.     In early June 2022, Kolber contacted PHH to inquire into the status of PHH countersigning the PMA. During this call, PHH advised Kolber for the first time that it had an issue with how Mrs. Zeldis signed her name. Specifically, PHH did not approve her signing as "Cheryl" instead of "Cheri" since the modification agreement spelled her name as "Cheri".

31.     During this call, the PHH representative assured Kolber that an updated permanent modification agreement would be issued which would reflect Mrs. Zeldis's name spelled as it is on her passport - "Cheryl B. Zeldis".

32.     PHH then issued an updated agreement. However, the updated agreement still spelled "Cheri Zeldis" instead of "Cheryl B. Zeldis".

33.     Kolber contacted PHH to follow up on why PHH still issued an updated agreement spelling "Cheri" instead of "Cheryl". During this call, PHH advised Kolber that PHH required an updated ID for Mrs. Zeldis, showing her name spelled as "Cheryl", so that they could amend the agreement accordingly.

34.     Kolber mailed PHH a copy of Mrs. Zeldis's passport reflecting her first name spelled as "Cheryl".

35.     On or about July 18, 2022, Kolber spoke with a PHH representative. During this call, PHH advised Kolber that Mrs. Zeldis's name on the agreement had been updated to reflect "Cheri" and had been mailed to Kolber. Kolber advised PHH that they had not received the updated agreement yet, however. So, PHH agreed to email it to Kolber.

36.     That day, PHH sent an Updated Permanent Modification Agreement ("UPMA") dated July 11, 2022 via email. *A true and accurate copy of the UPMA is attached hereto as* **Exhibit D**. The UPMA was identical to the PMA, except it: (1) spelled Mrs. Zeldis's name as "Cheryl Beth Zeldis" instead of "Cheri Zeldis"; and (2) needed to be signed and returned by July 29, 2022.

37.     Kolber and non-obligor Cheri Zeldis signed the UPMA before a notary and sent it via USPS Mail [USPS Tracking No.: EI065995363US]. The USPS Mail Proof of Delivery, attached hereto as **Exhibit E**, shows the UPMA was delivered to PHH on July 20, 2022.

38.     Despite being in compliance with the UPMA's terms, on or about August 2, 2022, Kolber called PHH and was notified the modification was rejected because it was not delivered on or before July 13, 2022.

39.     PHH escalated Kolber's matter to their "resolution team" who admitted that PHH made a mistake, apologized, and told Kolber that PHH would put in a

request to have PHH's records corrected so that the UPMA could be finalized. The representative advised Kolber to contact PHH on August 9, 2022 to follow up.

40. During the August 9, 2022 call, Kolber spoke with a PHH representative and a supervisor. During this call, PHH advised Kolber that it was issuing a brand new loan modification agreement which reflected a significant increase in monthly payments from the UPMA. During this call, PHH advised Kolber that any payments due between then and the time the new loan modification was processed could not be accepted and instead unpaid amounts would accrue interest and penalties to the loan balance for which Kolber would be responsible.

41. At Kolber's insistence, the PHH supervisor agreed to escalate Kolber's issue further and to advise the loan underwriting area that Kolber was expecting the UPMA to be reopened and reinstated given that Kolber had timely complied with every step in the process required to finalize the original loan modification agreement.

42. On or about August 12, 2022, PHH provided Kolber, via email, with a copy of correspondence dated July 11, 2022 which stated "Thank you for your request for mortgage assistance. Unfortunately, you are no longer eligible for the loan modification offer that was sent to you due to the reason listed below.  You failed to return the final modification agreement within the required timeframe" (the

"Rejection Letter"). *A true and accurate copy of the Rejection Letter is attached hereto as* **Exhibit F**. This was the first instance Kolber received this correspondence.

43.     PHH provided Kolber a New Proposed Loan Modification ("NPLM") with completely different terms from the PMA and UPMA dated August 19, 2022. *A true and accurate copy of the NPLM is attached hereto as* **Exhibit G**.

44.     The NPLM required Kolber to make monthly payments of $3,755.27, an increase of $379.89 from the PMA's and UPMA's monthly payment amount of $3.375.38. *See* Exhibits G and B.

45.     On or about September 12, 2022, Kolber sent PHH a TPP Reservation of Rights Letter ("Reservation of Rights Letter #1), which stated that Kolber accepted the modification in the NPLM verbally on September 6, 2022, but made this acceptance with a full reservation of his rights. A true and accurate copy of the Reservation of Rights Letter #1 is attached hereto as **Exhibit H**, and confirmation of facsimile transmission receipt is attached hereto as **Exhibit I**. Kolber was left with no choice but to take the only modification option before him.

46.     Kolber timely accepted and remitted the three (3) payments due under the NPLM.

47.     Kolber, through counsel, sent PHH a notice of error pursuant to 12 C.F.R. § 1024.35 ("NOE #1") on September 19, 2022 via certified mail, return

receipt requested [USPS Tracking No.: 70151520000166164933] to the address PHH designated for receipt of the same. *A true and accurate copy of the NOE is attached hereto as* **Exhibit J**.

48.   Through NOE #1, Kolber advised PHH of its servicing errors in failing to honor the UPMA. *See* Exhibit J.

49.   In a correspondence from PHH dated September 23, 2022, PHH claimed to have done a review and found "...the denial was accurate." *A true and accurate copy of the correspondence is attached hereto as* **Exhibit K**. PHH went on to acknowledge the notary spelling error on the PMA which caused the same modification agreement, the UPMA, to be resent. However, PHH contended:

> ***On July 11, 2022 the modification was denied as Mr. Kolber failed to return the final modification agreement within the required timeframe.***

[emphasis added].

50.   PHH sent Kolber a Reinstatement Quote on October 6, 2022 providing the following:

| Description | Amount |
|---|---|
| Principal and Interest Payment | $26,210.52 |
| Suspense Balance | $-3,226.93 |

| Escrow Payment | $19,528.70 |
|---|---|
| **Total Amount Due to Reinstate** | **$42,512.29** |

*A true and accurate copy of the Reinstatement Quote is attached hereto as* **Exhibit L**. PHH required the Total Amount Due to Reinstate to be remitted no later than October 31, 2022.

51.    Due to issues with USPS tracking NOE #1[2], on or about October 7, 2022, Kolber, through counsel, re-issued NOE #1 to PHH at its designated address for receipt of such, via  certified mail, return receipt requested [USPS Tracking No.: 70151520000166165664] ("Resent NOE #1"). *A true and accurate copy of Resent NOE #1 is attached as* **Exhibit M**, and Proof of Delivery is attached as **Exhibit N**.

52.    PHH sent Kolber a correspondence dated October 14, 2022 in which PHH enclosed documents requested in the RFI, and repeated the following as a response NOE #1:

---

[2] As of September 27, 2022, USPS still showed NOE #1 as "Moving Through Network". That was the last tracking update USPS provided as to the NOE. *See* https://tools.usps.com/go/TrackConfirmAction?qtc_tLabels1=70151520000166164933

Based on the telephonic conversation with our customer service representative on June 2, 2022, Mr. Kolber notified, the Non-Obligor's name was printed incorrectly and requested for a new modification agreement with the correct legal name printed.

The agreement should have been signed and notarized by Ms. Zeldis and the notary reflecting her name as it appears on the Deed of Trust and then using an AKA or FKA to accommodate the name change. As the name change is not recorded on the title. Therefore, we cannot accept a signed agreement with the name that does not match the signature on the mortgage deed of trust.

On July 11, 2022, the modification was denied as Mr. Kolber failed to return the final modification agreement within the required timeframe. Enclosed is a copy of denial letter for your reference

*A true and accurate copy of the correspondence from PHH is attached hereto as* **Exhibit O**.

53.     At no point did PHH advise Kolber of these notary instructions. Furthermore, PHH's statement as to this AKA is contradictory as the UPMA which it did issue to Kolber stated "Cheryl B. Zeldis".

54.     PHH sent Kolber a correspondence dated October 18, 2022 in which PHH stated it would review the issues and provide a written response by November 11, 2022. *A true and accurate copy of the correspondence from PHH is attached hereto as* **Exhibit P**.

55.     Through correspondence dated December 2, 2022, PHH sent what appears to be a response to NOE #1. *A true and accurate copy of the correspondence from PHH is attached hereto as* **Exhibit Q**. A third time, PHH stated:

> **On July 11, 2022 the modification was denied as Mr. Kolber failed to return the correctly executed final modification agreement within the required timeframe.**

[emphasis added]. PHH also claimed the following:

> ***In order for us to honor the original loan modification we would need Mr. Kolber to make a payment of $235.71 to bring the account current through December 2022, as well as a properly executed agreement ensuring Ms. Zeldis's name is signed as it shows on the Mortgage, with an AKA showing her current name.***
>
> As we advised if Mr. Kolber would prefer to accept the original modification offer we would suggest he contact his relationship manager at the earliest convenience to make arraignments to make the $235.71 payment and arrange to get the properly execute documents in to us.   The RM is available toll-free at (800) 750-2518 Monday through Friday

PHH also claimed it investigated the allegation that PHH failed to honor the loan modification (the PMA and UPMA) but stated "it found no evidence an error occurred on our part."

56.     Due to Kolber's compliance with the NPLM, Kolber received notification he was eligible for another loan modification ("THIRD PMA") in a correspondence dated December 9, 2022. *A true and accurate copy of the THIRD PMA is attached hereto as* **Exhibit R**.

57.     The THIRD PMA provided that Kolber's monthly payment would be $3.727.63 beginning on January 1, 2023. *See* Exhibit R. The THIRD PMA required (1) Kolber and non-obligor Cheri Zeldis ("Zeldis" and "non-obligor") sign the THIRD PMA before a notary and return the THIRD PMA before December 27, 2022; and (2) if applicable to Kolber, Kolber make all remaining trial period payments on or before their due dates.

58.     PHH, through correspondence dated December 15, 2022, provided a Notice of Servicing Transfer, stating that as of January 3, 2022, servicing of the loan would be transferred to SPS. *A true and accurate copy of the Notice of Servicing Transfer is attached as* **Exhibit S**.

59.     Relying upon PHH's December 2, 2022 correspondence, on or about December 15, 2022, Counsel, on behalf of Kolber, called PHH and spoke with two representatives at PHH. Counsel advised PHH that Kolber sought to reinstate the UPMA, as PHH represented it would by and through its December 2, 2022 letter. The second representative at PHH stated she was unable to give a response and would be forwarding the matter to the Consumer Ombudsman Office. She also advised Kolber's counsel to follow up with PHH the following week.

60.     Counsel, on behalf of Kolber, called PHH again on or about December 20, 2022, to follow up again on PHH reinstating the UPMA. During this call, Kolber's counsel advised PHH's representative of the December 15 phone call. The representative confirmed a message was forwarded to PHH's Consumer Ombudsman team and stated that PHH would contact Kolber's counsel to follow up on either December 22 or December 23, 2022.

61.     On or about December 23, 2022, Kolber accepted the NPLM under duress and under protest with a full reservation of his rights ("Reservation of Rights

Letter #2). *A true and accurate copy of the Reservation of Rights Letter #2 is attached hereto as* **Exhibit T**. Kolber was left with no choice but to take the only modification option before him.

62.    On or about December 23, 2022, Counsel, on behalf of Kolber, called PHH to follow up about PHH reinstating the UPMA. The representative stated there was no update from the Consumer Ombudsman Office. Counsel advised the PHH representative of the December 27, 2023 deadline for the THIRD PMA and the imminent servicing transfer on January 3, 2022. Counsel also advised the PHH representative Kolber will sign and return the THIRD PMA, but made clear it is under protest with reservation of Kolber's rights. Furthermore, Counsel made clear that the execution of the THIRD PMA does not at all indicate that Kolber no longer wants the UPMA reinstated.

63.    On or about December 30, 2022, Counsel, on behalf of Kolber, called PHH to follow up on PHH's promise to reinstate the terms of the PMA or UPMA. The representative for PHH claimed the account is still in review for modification and there are no updates regarding reinstating the PMA.

64.    Kolber received a fourth permanent modification agreement ("FOURTH PMA") from PHH dated January 6, 2023, providing the following as reasons the modification was incomplete:

> *The balloon disclosure or modification agreement we received is missing signatures from the borrower or co-borrower and must be dated correctly.*
>
> *The Modification agreement must be executed in the presence of a Notary Public and the Notary information is incomplete on the signature page(s).*

[bold added] *A true and accurate copy of the FOURTH PMA is attached hereto as* **Exhibit U**.

65.     The FOURTH PMA contained the same terms as the THIRD PMA, requiring a modified monthly payment of $3,727.63. *See* Exhibits U and R. The deadline for the modification offer in the FOURTH PMA was January 24, 2023.

66.     On or about January 3, 2023, the servicing of the Loan transferred to SPS. As of the transfer, SPS declared Kolber in default on the Loan.

67.     SPS sent Kolber a statement dated January 10, 2023 ("SPS January Statement"), claiming Kolber is in default. In the SPS January Statement, SPS claims the total amount due by February 1, 2023 is $44,576.38. *A true and accurate copy of the SPS January Statement is attached hereto as* **Exhibit V**. The breakdown of the total amount due is as follows:

| Explanation of Payment Amount | |
|---|---|
| Principal and Interest | $2,184.21 |
| Escrow (for Taxes and Insurance) | $1,630.57 |
| Subsidy | $0.00 |
| **Regular Monthly Payment** | **$3,814.78** |
| Unpaid Late Charges | $0.00 |
| Other Charges and Fees | $0.00 |
| Past Due Payment(s) | $49,592.14 |
| Unapplied Payment(s) | $8,830.54 |
| **Total Amount Due*** | **$44,576.38** |

68.    Kolber and the non-obligor signed the FOURTH PMA under protest. The duly executed FOURTH PMA along with a reservation of rights letter ("Reservation of Rights Letter #3") was sent to PHH via overnight mail on January 20, 2023. *A true and accurate copy of the Reservation of Rights Letter #3 is attached hereto as* **Exhibit W**.

69.    Kolber, through counsel, sent SPS a notice of error pursuant to 12 C.F.R. § 1024.35 ("SPS NOE") on January 25, 2023 via certified mail, return receipt requested [USPS Tracking No.: 70151520000166378347] to SPS's designated address to respond to notices of error, requests for information, and qualified written requests[3]. *A true and accurate copy of the SPS NOE is attached hereto as* **Exhibit X**, *and Proof of Delivery is attached as* **Exhibit Y**.

---

[3] *See* https://www.spservicing.com/StaticDetails/ContactUs.

70.    SPS continues PHH's practice of not honoring the UPMA which was duly executed.

## IMPACT UPON AND DAMAGES SUFFERED BY PLAINTIFF

71.    As a result of Defendant PHH's conduct and SPS's continuation of that conduct, Plaintiff has been caused to suffer the following damages:

a.   PHH and SPS have failed to provide the loan modification contained in the UPMA to Kolber, preventing him from saving his Home by obtaining the payment relief that the Modification would have provided to him;

b.   Kolber has incurred attorneys' fees and postage costs in the preparation and mailing of the notices of error and in the review of the responses to the notices of error;

c.   Kolber has suffered an unnecessary delay in the rehabilitation of his credit standing which should have begun when he provided PHH the duly executed UPMA before its deadline;

d.   The lost opportunity of the terms in the UPMA;

e.   Kolber has been forced to accept, under protest, the higher payment PHH provided through the FOURTH PMA; and,

f.  Kolber has suffered great emotional distress driven by the continued reasonable and justified fear of continued financial hardship due to PHH's and SPS's failure to honor the UPMA without explanation, which has resulted in frustration, loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

## PATTERN AND PRACTICE OF PHH'S VIOLATIONS OF RESPA

72.    PHH's actions are part of a pattern and practice of behavior in violation of Kolber's rights and in abdication and contravention of PHH's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

73.    As of the filing of this Complaint, PHH has had two thousand three-hundred and sixty-four (2,364) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database related to "Mortgage". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database accessible at: http://www.consumerfinance.gov/data-research/consumer-complaints/.

74.    Upon review of the CFPB's consumer complaint database, other borrowers have lodged one hundred and forty-one (141) similar complaints as to PHH's RESPA violations, specifically issues related to two categories of subissues

"Loan modification, collection, foreclosure" and "Struggling to Pay Mortgage". The complaints show conduct which demonstrates that PHH has engaged in a pattern or practice of violating RESPA with respect to other borrowers[4].

## COUNT ONE: AGAINST PHH
### VIOLATIONS OF RESPA
### [Violations of 12 C.F.R. §§ 1024.35(e) and 12 U.S.C. §§ 2605(k)(1)(C) and (E) for failing to properly respond to a notice of error

75.     Plaintiff restates and incorporates all of the statements and allegations contained in paragraphs 1 through 77 in their entirety, as if fully rewritten herein.

76.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

77.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower"

---

[4] *See* https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=PHH%20Mortgage%20Services%20Corporation&date_received_max=2023-01-18&date_received_min=2011-12-01&page=1&product=Mortgage%E2%80%A2FHA%20mortgage&searchField=all&size=25&sort=created_date_desc&tab=List

78.     Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards to a borrower's mortgage loan.

79.     12 C.F.R. § 1024.35(d) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

80.     12 C.F.R. § 1024.35(e)(3)(i)(C) provides that a servicer must respond to a notice of error from a borrower within thirty (30) days, excluding legal public holidays, Saturdays, and Sundays, of receipt.

81.     12 C.F.R. § 1024.35(e)(3)(ii) provides that a servicer may extend the time period for responding by an additional fifteen (15) days, excluding legal public holidays, Saturdays, and Sundays, if before the end of the thirty (30) day period, the servicer notifies the borrower of the extension and the reasons for the extension in writing.

82.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective

date of the correction, and contact information, including a telephone number, for

further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

83.    12 U.S.C. § 2605(k)(1)(C) provides that "[a] servicer of a federally

related mortgage shall not … fail to take timely action to respond to a borrower's

requests to correct errors relating to allocation of payments, final balances for

purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's

duties."

84.    Standard servicer duties are those "typically undertaken by servicers in

the ordinary course of business." 78 FR 10696, 10739.

85.    12 U.S.C. § 2605(k)(1)(E) provides that "[a] servicer of a federally

related mortgage shall not … fail to comply with any other obligation found by the

Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry

out the consumer protection purposes of this chapter."

86.    NOE #1 and resent NOE #1 constitutes a notice of error as defined by 12 C.F.R. § 1024.35(a) as both are written notices from the borrower that assert an error "that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." *See* <u>Exhibits K and N</u>.

87.    PHH received resent NOE #1 at their designated address for receipt of such. *See* <u>Exhibit O</u>.

88.    Through resent NOE #1, Kolber alleged an error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to honor the terms of a permanent loan modification. *See* <u>Exhibit N</u>.

89.    PHH's failure to properly respond to resent NOE #1, by failing to correct its errors or to otherwise perform a reasonable investigation into and otherwise properly respond to the errors alleged through resent NOE #1, constitute violations of 12 C.F.R. § 1024.35(e) and 12 U.S.C. §§ 2605(e) and (k) and, as a result, Kolber has suffered actual damages as detailed, *supra*.

90.    A reasonable investigation would reveal that the UPMA was duly executed and received before the deadline of July 29, 2022. *See* <u>Exhibit F</u>. It would also reveal that PHH inaccurately stated that "Kolber failed to return the correctly

executed final modification agreement within the required timeframe" in three different correspondences. *See* Exhibit G.

91.    A reasonable investigation would reveal PHH's rejection letter could not revoke the modification offer contained in the UPMA. *See* Exhibit G.

92.    A reasonable investigation would reveal PHH had to honor the terms contained in the UPMA and provide Kolber the modification contained within it.

93.    Therefore, PHH has not conducted a "reasonable investigation" into the error as required by 12 C.F.R. § 1024.35(e)(1)(i)(B) by claiming that no error occurred.

94.    Further demonstrating PHH's failure to conduct a "reasonable investigation" is its statement through its December 2, 2022 response that "if Mr. Kolber would prefer to accept the original modification offer we would suggest he contact his relationship manager at his earliest convenience to make the $235.71 and arrange to get the properly execute documents to us", yet, Kolber, through counsel, contacted PHH numerous items in regards to the same, and PHH failed to implement the earlier modification.

95.    PHH's  actions are part of a pattern and practice of behavior in conscious disregard for Kolber's rights.

96.     PHH's conduct as pled, *supra*, shows a conscious disregard for Kolber's rights.

97.     As a result of their actions, PHH is liable to Kolber for statutory damages and actual damages as further described, *supra*. 12 U.S.C. § 2605(f)(1).

98.     Additionally, Kolber requests reasonable attorneys' fees and costs incurred in connection with this action. 12 U.S.C. § 2605(f)(3).

## COUNT TWO: AGAINST PHH AND SPS
### BREACH OF CONTRACT
### Failure to Honor the Loan Modification

99.     Plaintiff restates and incorporates all of his statements and allegations contained in paragraphs 1 through 77, in their entirety, as if fully rewritten.

100.    The UPMA is an enforceable contract between Kolber and PHH, as well as SPS. *See* Exhibit E.

101.    The UPMA was duly executed and Kolber completed all steps to accept the loan modification offer. The UPMA was then properly sent to PHH and received before the deadline to accept the modification offer. *See* Exhibits E and F.

102.    PHH breached the contract by failing to honor the express terms of the UPMA and failing to provide the modification to Kolber.

103.    SPS breached the contract by failing to honor the express terms of the UPMA and failing to provide the modification to Kolber.

104.    PHH breached the UPMA. The breach is one of bad faith as demonstrated by the allegations *supra*.

105.    SPS breached the UPMA. The breach is one of bad faith as demonstrated by the allegations *supra*.

106.    PHH owed Kolber a fiduciary duty to handle his Loan Modification in a proper manner according to the terms of the UPMA. PHH breached its duty to Kolber by failing to provide the modification in the UPMA to Kolber.

107.    SPS owed Kolber a fiduciary duty to handle his Loan Modification in a proper manner according to the terms of the UPMA. PHH breached its duty to Kolber by failing to provide the modification in the UPMA to Kolber.

108.    Furthermore, PHH's and SPS's intentional and knowing conduct has caused Kolber to suffer extreme emotional distress driven by the fear he may become unable to make monthly payments in the amount of the THIRD PMA or FOURTH PMA which will result in the loss of his Home.

109.    This continued fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress, which is a foreseeable result of PHH's breach of the UPMA.

110.   As a result of PHH's and SPS's actions, PHH and SPS are liable to Plaintiff for actual damages as further alleged *supra*.

**COUNT THREE: AGAINST PHH AND SPS**
**Violation of the Covenant of Good Faith and Fair Dealing**

111.   Kolber restates and incorporates all of his statements and allegations contained in paragraphs 1 through 77, in their entirety, as if fully written.

112.   The purpose of the covenant of good faith and fair dealing is to guarantee that the parties remain committed to the intended and agreed upon expectations of the parties in their performance.

113.   New Jersey law finds that all contracts contain an implied covenant of good faith and fair dealing, and that this implied covenant prohibits either party from doing anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *See Doe v. Princeton Univ.*, 30 F.4th 335, 339 (3d Cir. 2022).

114.   PHH has breached this duty by failing to provide the modification in the PMA or UPMA to Kolber.

115.   PHH has further breached this duty by failing to correct their errors, despite being notified to do so.

116.    PHH acted in bad faith, dishonestly, and with an improper motive to injure the rights of Kolber.

117.    Due to PHH's conduct, Kolber has suffered actual damages, including but limited to legal fees and express to retain counsel to prepare NOE #1 and send resent NOE #1, and review correspondences and responses to NOE #1.

118.    Due to PHH's conduct, Kolber has suffered and continues to suffer significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

119.    As a result of PHH's conduct, PHH is liable to Kolber for actual damages as further alleged *supra*.

## COUNT FOUR: AGAINST PHH
### Violation of the Consumer Fraud Act (CFA), N.J.S.A § 56:8-2

120.    Kolber restates and incorporates all of his statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully written.

121.    The CFA prohibits:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate...

*N.J.S.A.* § 56:8-2.

122.   In the operation of its business. PHH has engaged in the use of unconscionable commercial practices, as further described supra.

123.   Each unconscionable practice, deception, false promise, misrepresentation and/or knowing omission of material fact by PHH described supra constitutes a separate violation under the CFA.

124.   PHH is a partnership, corporation, trust, business entity, or business association, qualifying as a "person" as defined by *N.J.S.A.* 56:8-1(d).

125.   Each unconscionable practice, deception, false promise, misrepresentation and/or knowing omission of material fact by PHH described supra, constitutes a separate violation under the CFA.

126.   Despite receipt of the PMA and UPMA before each offer's deadline to accept, PHH failed to provide the modification to Kolber.

127.   Despite being informed the offers PMA and UPMA were accepted by Kolber, PHH kept putting off action to correct the errors and honor the terms of the modification.

128.   PHH's errors and refusals to correct their errors constitute deception, false promises, misrepresentations, and/or unconscionable acts under the CFA.

129.   PHH's unconscionable commercial practices have caused Kolber ascertainable losses, further alleged supra, which include:

a. The Plaintiff remitted payments in furtherance of the UPMA, relying on the express promise of a permanent modification;

b. Plaintiff incurred attorneys' fees and postage costs in the preparation and mailing of the notices of errors and reviewing the responses to the notices of error;

c. A delay in the rehabilitation of his credit standing which should have begun upon their completion of the TPP by way of a permanent loan modification;

d. The lost opportunity of a permanent loan modification upon the completion of the TPP which has prevented Plaintiff from saving the Property by obtaining the payment relief that the permanent loan modification would have provided to him; and

e. Plaintiff suffered and currently suffers great emotional distress driven by the continued fear of losing the Home in foreclosure, which has resulted in anxiety and other mental distress.

130.    As a result of PHH's actions, PHH is liable to Kolber for actual damages as further alleged, *supra*, and attorneys' fees and costs. Plaintiff is entitled to treble the damages caused by PHH's violations of the CFA. *N.J.S.A.* § 56:8-19.

### COUNT FIVE: AGAINST SPS
### Violation of 15 U.S.C. §§ 1692, *et seq*. (The FDCPA)

131.    Kolber restates and incorporates all of his statements and allegations contained in paragraphs 1 through 59, in their entirety, as if fully written.

132.    Kolber is a "consumer" as he is a natural person obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

133.    The Loan is a "debt" is an obligation or alleged obligation of Kolber to pay money arising out of a transaction primarily for personal, family, or household purposes – Kolber's purchase or refinance of the Home for his primary, principal residence. 15 U.S.C. § 1692a(5).

134.    SPS is doing business in the State of New Jersey as a business entity operating as a collection agency, and is a "debt collector" because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to other creditors. 15 U.S.C. § 1692a(6).

135.    SPS treated the Loan as in default at the time SPS began to collect the debt as SPS claimed through the SPS January Statement that Kolber owed an

"Overdue Amount" of $44,576.38 immediately after accepting the service transfer of the Loan from PHH. *See* <u>Exhibit W</u>.

136.    A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. 15 U.S.C. § 1692d.

137.    SPS's conduct violated 15 U.S.C. § 1692d in that SPS engaged in behavior the natural consequence of which was to harass, oppress, or abuse Kolber in connection with the collection of a debt. Specifically, Kolber SPS and continues to demand "Past Due Payments" which fail to reflect the agreed terms of the UPMA.

138.    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. 15 U.S.C. § 1692e.

139.    SPS's conduct violated 15 U.S.C. § 1692e in that SPS used false, deceptive, or misleading representations in connection with the collection of a debt. Specifically, SPS is demanding illegal "Past Due Payments" and otherwise demanding a "Regular Monthly Payment" of $3,814.78, which reflects SPS's refusal to honor the terms of the UPMA. *See* <u>Exhibit W</u>.

140.    A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. 15 U.S.C. § 1692f.

141.   SPS's conduct violated 15 U.S.C. § 1692f in that SPS used unfair or unconscionable means in connection with the collection of a debt. Specifically, SPS is demanding improper past due amounts and otherwise demanding a regular monthly mortgage payment which contradicts the agreed terms of the UPMA.

142.   As a result of SPS's actions, SPS is liable to Kolber for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiff Michael Kolber respectfully requests that this Court grant judgment against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services and Defendant Select Portfolio Servicing, Inc., and award him the following:

a. An award of actual damages against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services for the allegations contained in Count One;

b. An award of statutory damages of Two Thousand Dollars ($2,000.00) from PHH Mortgage Corporation d/b/a PHH Mortgage Services for each violation of RESPA as contained in Count One;

c. An award of statutory damages of One Thousand Dollars ($1,000.00) from Defendant Select Portfolio Servicing, Inc. for each violation of the FDCPA as contained in Count Five;

d. An award of treble actual damages against PHH pursuant to *N.J.S.A.* § 56:8-19 for the allegations contained in Count Four;

e. For costs and reasonable attorneys' fees and expenses against Defendant PHH as contained in Counts One and Four;

f. For costs and reasonable attorneys' fees and expenses against Defendant Select Portfolio Servicing, Inc. as contained in Count Five.

g. For all other relief this Court may deem just and proper.

Respectfully submitted:

*/s/ Javier L. Merino*
Javier L. Merino
The Dann Law Firm, PC
1520 U.S. Highway 130, Suite 101
North Brunswick, NJ 08902
Telephone: (216) 373-0539
Facsimile: (216) 373-0536
Email: notices@dannlaw.com
*Counsel for Plaintiff Michael Kolber*

## **JURY DEMAND**

Plaintiff Michael Kolber hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Javier L. Merino
Javier L. Merino
The Dann Law Firm, PC
*Counsel for Plaintiff Michael Kolber*